**FILED**

March 9, 2021
Jeanne A. Naughton, CLERK
United States Bankruptcy Court
Newark, NJ
By: /s/ Sharon Moore, Courtroom Deputy

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| In re: | : | |
| | : | CHAPTER 13 |
| DOUGLAS J. HEIDT, | : | |
| Debtor. | : | |
| | : | CASE NO.: 19-32789 (RG) |
| _____ | : | |
| | : | |
| DOUGLAS J. HEIDT, | : | |
| | : | ADV. NO.: 19-2294 (RG) |
| Plaintiff, | : | |
| v. | : | |
| BV001 REO BLOCKER LLC, and | : | |
| U.S. BANK, AS CUSTODIAN | : | |
| FOR BV TRUST 2015-1, | : | |
| Defendants. | : | |
| _____ | : | |

**OPINION**

**APPEARANCES:**

NEIL J. FOGARTY, ESQ.
Northeast New Jersey Legal Services
574 Summit Avenue
Jersey City, NJ 07306
Counsel for Debtor/Plaintiff,
Douglas J. Heidt

BRIAN W. HOFMEISTER, ESQ.[1]
Law Firm of Brian W. Hofmeister, LLC
3131 Princeton Pike Building 5, Suite 110
Lawrenceville, NJ 08648
Counsel for Defendants, BV001 Reo Blocker LLC
& U.S. Bank, as the Custodian for BV Trust 2015-1

---

[1] Defendants were formerly represented by Susan B. Fagan-Rodriquez, Esq. until her passing during the pendency of this case. The Court acknowledges Ms. Fagan-Rodriquez's fine work before the Court over the years.

**ROSEMARY GAMBARDELLA, UNITED STATES BANKRUPTCY JUDGE**

### Matter Before the Court

Before the Court is Debtor Douglas J. Heidt's Motion for Leave to File an Amended Adversary Complaint asserting a second cause of action pursuant to 11 U.S.C. § 548. The Defendants, BV001 Reo Blocker LLC ("BV001") and U.S. Bank, as the Custodian for BV Trust 2015-1, filed an Opposition to the Motion and also seek dismissal of the § 548 claim sought to be added to the Complaint by the Debtor under Fed. R. Civ. P. 12(b)(6). Debtor filed a Reply and Additional Submission in support of the Motion for Leave to File an Amended Adversary Complaint.[2]

This Court held a hearing on February 10, 2021. The following constitutes this Court's findings of fact and conclusions of law.

### Jurisdictional Statement

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(A) and (H) and the Standing Order of Reference from the United States District Court for the District of New Jersey dated July 23, 1984, as amended September 18, 2012, referring all bankruptcy cases to the bankruptcy court. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A) and (H). Venue is proper in this Court pursuant to 28 U.S.C. § 1408.

### Statement of Facts and Procedural Background

Debtor Douglas J. Heidt ("Debtor") occupies the Property located at 3 Barber Street, Little Falls, New Jersey 07424 also identified as Block 83, Lots 6 and 7 of the tax map of Little

---

[2] Also pending before the Court is the Defendant BV001's Motion for an Order Expunging the Proof of Claim of BV001 Reo Blocker LLC. Debtor filed Opposition to the Motion Expunging Proof of Claim. A Reply Certification of Counsel in Support of Motion to Expunge Proof of Claim was filed. This Motion was carried without decision based on the Court's finding that it was premature to decide the Motion prior to the adjudication of the adversary proceeding.

2

Falls, New Jersey (the "Property") as a primary residence. Debtor asserts that the Property is valued at $220,000 as of the date of the final judgment in the New Jersey State Court Tax Foreclosure (ECF 6, Adv. No. 19-2294-RG, Certification of Cynthia Rivera) whereas the Defendants assert the Property is valued between $150,000 to $200,000 (ECF 10, ¶ 13, Adv. No. 19-2294-RG).

On December 9, 2015, Defendants or Defendants' predecessor-in-interest, BV001 Trust & Creditors, purchased a Tax Sale Certificate (No. 11-2015) for real estate taxes owed in 2015 on the Property from the town of Little Falls, New Jersey. Debtor asserts this was in the amount of $5,156.68 at 0.00% interest per annum. Defendants assert that the Tax Sale Certificate was purchased in competitive bidding and acquired at 0% interest for which BV001 Trust & Creditors paid an additional $12,800 premium to obtain. By assessment recorded on April 11, 2016, the Tax Sale Certificate was assigned by BV001 Trust & Creditors to Defendant, U.S. Bank as Custodian for BV Trust 2015-1.

On February 28, 2019, Defendants filed a Tax Foreclosure Complaint against Debtor in the Superior Court of New Jersey, Passaic County, Docket Number F-004093-19 ("Tax Foreclosure"). On June 20, 2019, an Order setting the amount, time, and place of redemption was set by the Superior Court for August 19, 2019 in the amount of $30,540.53, with costs of suit to be taxed in the sum of $1,240. On September 5, 2019, Defendants filed a Motion for Final Judgment in the Superior Court of New Jersey. On September 9, 2019, the Debtor entered into a contract of sale with regard to the Property with F&G Grand Property, LLC for $220,000, which Cynthia Rivera, Real Estate Broker-Associate at Keller Williams, certified was the fair market value of the Property. On September 18, 2019, an uncontested order for Final Judgment was entered against the Debtor in the New Jersey Superior Court, Chancery Division, Passaic County

3

(Docket No. F-004093-19). The Debtor asserts that pursuant to the September 18, 2019 Default Final Judgment, the Defendants received the involuntary transfer of title of the Debtor's interest in the Property. Debtor filed a Notice of Motion to Vacate the Foreclosure Judgment in the New Jersey Superior Court, which was stayed by the Debtor's bankruptcy filing on December 6, 2019 when Debtor filed the petition for relief under Chapter 13 of the Bankruptcy Code. That same day, Debtor filed his Chapter 13 plan which provides that Debtor will make payments of $105.00/month for 36 months from future earnings and from the sale of the subject Property. The Plan also provides that the Debtor shall bring an adversary proceeding against Defendants to recover the Property. Also on December 6, 2019, Debtor through counsel, Northeast New Jersey Legal Services, filed such adversary complaint seeking to avoid the transfer of the Property to Defendants as a preferential transfer under § 547(b) of the Bankruptcy Code, bearing Adv. No. 19-2294-RG.

Thereafter, on February 7, 2020, Debtor filed the Motion for Summary Judgment in that proceeding. (ECF 6, Adv. No. 19-2294-RG).

On June 4, 2020, Defendants filed a Cross-Motion for Summary Judgment. (ECF 13, Adv. No. 19-2294-RG).

Responsive pleadings were filed thereafter.

On July 16, 2020 a hearing was held on the Debtor's Motion for Summary Judgment and the Defendants' Cross-Motion for Summary Judgment.

After that hearing and upon further research, Debtor believed he had a second cause of action under 11 U.S.C. § 548 based upon the same facts which the initial complaint rests and on July 28, 2020, Debtor filed this Motion for Leave to Amend the Complaint. (ECF 15, Adv. No. 19-2294-RG).

4

On January 19, 2021, this Court entered an Order denying Debtor's Motion for Summary Judgment as to the First Count of the Complaint seeking recovery of a § 547 voidable preference and granting Defendants' Motion for Summary Judgment as to the First Count of Debtor's Complaint. (ECF 28, Adv. No. 19-2294-RG). In so ruling, this Court held that the Debtor, at the time of the alleged preferential transfer, was not "insolvent" as that term is defined under 11 U.S.C. § 101(32)(A) so that as a matter of law, the Debtor could not set aside the transfer as preferential under 11 U.S.C. § 547(b).[3]

There are 12 total claims listed in Debtor's Chapter 13 case, including the claim of BV001. The claims total $33,833.93. Debtor filed a secured claim on behalf of BV001 on March 5, 2020, in the amount of $30,540.53, which is the only secured claim in the proceeding. The Debtor also filed approximately 11 other proofs of claim on behalf of various creditors. In Debtor's Chapter 13 plan, he proposes to sell the subject Property and pay all 12 creditors 100% of their claims.

### _Motion for Leave to File Amended Complaint_ **[ECF 15]**

In Debtor's Motion for Leave to File Amended Complaint, he provides that the exhibits which are already filed in this adversary proceeding demonstrate the Property was valued at $220,000 by the real estate broker who obtained a buyer for the Property at that price. The tax sale certificate debt was $30,540.53, as determined by Order of the Superior Court of New Jersey on June 20, 2019. Debtor provides it therefore cannot be reasonably disputed that Defendants obtained a property worth $220,000 in exchange for an approximately $30,000 debt, which was

---

[3] On December 8, 2020, this Court entered an Order selecting Nancy Isaacson Esq., 75 Livingston Avenue, Suite 301, Roseland, N.J. 07068, to serve as mediator in the adversary proceeding. Ms. Isaacson accepted the appointment on December 23, 2020. On February 1, 2021, Ms. Isaacson filed a Mediation Report indicating that after a mediation conference on January 22, 2021, a settlement of the matter was not reached.

in the form of a tax sale certificate. For those reasons, Debtor argues he received less than a reasonably equivalent value in exchange for such transfer and became insolvent as a result and therefore has a claim under § 548 of the Bankruptcy Code. Debtor argues he makes this motion in good faith and filed the Adversary Complaint the day he filed his petition. Debtor claims he will not seek any discovery as to this cause of action. Defendants have already sought discovery which Debtor has provided. Debtor argues BV001 will not be prejudiced by the amendment of the Complaint because Debtor is simply asserting a new legal basis for relief based upon the same facts.

In Debtor's Amended Complaint, Debtor adds a Second Count in which he seeks avoidance of a constructively fraudulent transfer under 11 U.S.C. § 548. Debtor argues that on September 18, 2019, his legal interest in the Property was involuntarily transferred to BV001 by a judgment of the Superior Court of New Jersey. Debtor explains there was no sheriff's sale or bidding, and BV001 was the only party entitled to take the Property by strict foreclosure. Debtor argues he received less than a reasonably equivalent value in exchange for the Property because he only owed the Defendant a debt of $30,540.53 which was in the form of a tax sale certificate owned by BV001. Debtor provides the reasonably equivalent value of the Property was $220,000 and that as a result of the transfer, he become insolvent, as his assets, less exemptions, were less than his debts. For those reasons, Debtor seeks to avoid the transfer under 11 U.S.C. § 548.

Debtor argues that this Court should grant him leave to amend his Complaint to assert a second cause of action based upon facts already pleaded and proven. Debtor provides that under Fed. R. Civ. P. 15(a)(2), made applicable to the bankruptcy courts under Fed. R. Bankr. P. 7015, "a party may amend its pleading only with the opposition party's written consent or the court's leave. The court should freely give leave when justice so requires." Debtor argues there is no

6

time limit on amending one's complaint, such to further the goal of deciding suits on their merits. Debtor cites the Third Circuit case, *Arthur v. Maersk, Inc.*, 434 F.3d 196, 202 (3d Cir. 2006) among others, which provides that Fed. R. Civ. P. 15 "embodies a liberal approach to pleading." Debtor argues that on a Rule 15(a) motion, courts ought to consider undue delay, bad faith and the like, and that none of these factors are present here.

Instead, Debtor claims that he has made this motion in good faith, having filed this adversary proceeding the same day he filed his petition and shortly thereafter filing the motion for summary judgment. Debtor explains the relevant facts are already in the record, and this is the first amendment. Debtor claims he will not seek discovery as to this additional cause of action, and BV001 has already conducted discovery. Debtor solely asserts a new legal basis for relief under 11 U.S.C. § 548. Debtor cites *Dole v. Arco Chem. Co.*, 921 F.2d 484 (3d Cir. 1990) in which the Court permitted the plaintiff to amend the complaint 8-1/2 months after commencing the case. Debtor argues there will only be prejudice to him if this Court denies the motion, whereas if the Court grants the motion, BV001 will not be prejudiced as this theory of liability rests on the same facts already pleaded.

Debtor further argues that while the Court need not rule on the merits, bankruptcy judges in three different cases acknowledge the legal theory set forth under the Second Count of the Amended Complaint which each hold that 11 U.S.C. § 548 may be used by debtors to avoid transfers by strict tax foreclosures in New Jersey, holding such foreclosures did not provide a "reasonably equivalent value" to the debtor. Debtor cites *In re Berley Assocs., Ltd.*, 492 B.R. 433 (Bankr. D.N.J. 2013); *In re GGI Props., LLC*, 588 B.R. 401 (Bankr. D.N.J. 2018); and *In re Alan Hirschfeld,* Case No. 19-22044-SLM, Bankr. D.N.J., ECF 47 (Feb. 14, 2020). Debtor also cites *In re Hackler & Stelzle-Hackler*, 938 F.3d 473 (3d Cir. 2019) for support that the Third Circuit

7

would hold that a New Jersey strict foreclosure does not provide "reasonably equivalent value" in a § 548 action since the Third Circuit has already so held in a § 547 action.

Debtor also avers his plan is completely feasible and that once the Property is recovered and placed into the estate, all 12 creditors, including BV001, will be paid in full.

### ***Defendants' Opposition to the Motion for Leave to File Amended Complaint* [ECF 20]**

On November 5, 2020, Defendants filed Opposition to the Motion. In Defendants' Opposition, they argue the Motion should be denied on the basis that the Motion is untimely and futile and that because this Court has already received legal argument addressing Debtor's arguments under § 548, this Court should view Defendants' response as a cross-motion for dismissal of the Second Count of the Amended Complaint based on futility and the standard set forth in Fed. R. Civ. P. 12(b)(6).

Specifically, Defendants provide that because this Court has already ruled that Debtor's § 547 Motion is defunct, Debtor should not be permitted to proceed under the same theory, as they are doing so by again relying on *In re Hackler & Stelzle-Hackler*, 938 F.3d 473 (3d Cir. 2019). Defendants argue this case does not help Debtor and that Debtor admits as such, referring to the case only as an "indicator." Defendants provide there remains a divergence of opinion among the district and bankruptcy courts on this issue.

 Defendants also argue that Debtor has still not addressed the issue of insolvency as Defendants argue Debtor has no other debt besides that owed to Defendants. Defendants provide courts have discretion to grant or deny motions for leave to amend, citing *Foman v. Davis*, 371 U.S. 178, 83 S. Ct. 227 (1962) and Fed. R. Civ. P. 15(a)(2). Defendants argue notwithstanding the liberal view towards amendments, certain grounds including delay, bad faith, futility, undue prejudice, dilatory motive, and repeated failure to cure deficiencies by previously allowed

8

amendments, justify a denial of such motion. Defendants argue Debtor's admitted lack of preparedness when filing the Complaint should not be held against Defendants and Debtor's efforts to find a cause of action that may fit the present facts forces Defendants to continue to defend, causing undue prejudice.

Defendants argue the most compelling reason to deny the Motion lies in its futility. Defendants assert that if the amendment fails to state a claim upon which relief can be granted, that amendment to the complaint is futile. As support, Defendants provide that courts apply the same legal sufficiency standard as is applied under Fed. R. Civ. P. 12(b)(6). Defendants further claim that this Court has already required and received legal argument from Debtor addressing the salient points of Debtor's argument under § 548. Therefore, Defendants ask the Court to view the Motion and Defendants' response as a cross-motion for dismissal of the Second Count of the Amended Complaint. Defendants cite the standard set forth in Fed. R. Civ. P. 12(b)(6).

Defendants explain that there appears to be a split in authority among the bankruptcy and district courts as to whether or not a foreclosure of a tax sale certificate can be reversed as a fraudulent transfer. Defendants cite the District Court case *In re 2435 Plainfield Ave., Inc.*, 72 F. Supp. 2d 482 (D.N.J. 1999), *aff'd*, 213 F.3d 629 (3d Cir. 2000) (Table opinion) which held that the Uniform Fraudulent Transfer Act prevents a court from setting aside a tax foreclosure judgment as a fraudulent conveyance. Defendants argue no other local court has challenged that concept, and *Hackler* does not address this case because the facts in *Hackler* were limited to § 547, not § 548.

Defendants argue the cases otherwise cited by Debtor are distinguishable. Defendants argue in *In re GGI Props., LLC*, 568 B.R. 231 (Bankr. D.N.J. 2017), the defendant was a municipality and not a private corporate tax sale certificate holder, and that action was brought

9

under both § 547 and § 548. In that case, the municipality admitted that it obtained the tax sale certificate without bidding and the court case held that there is no distinction between a third-party purchaser as in the *Varquez* and *Berley* cases, and a municipality. *See Matter of Varquez*, 502 B.R. 186, 192 (Bankr. D.N.J. 2013); *In re Berley Assocs., Ltd.*, 492 B.R. 433, 440 (Bankr. D.N.J. 2013). Furthermore, the *GGI* court held that there is no significant difference prohibiting the application of the *Berley* and *Varquez* decisions. Defendants also provide that *GGI* did not address the concept of insolvency which is as significant issue in the present case as it was under the § 547 claim. Defendants further argue Debtor cannot show insolvency as his scheduled claims are fictitious and his assets are undervalued. For those reasons, Defendants seek denial of the Motion for Leave to Amend the Complaint and dismissal of the § 548 claim sought to be added to the Complaint.

### *Debtor's Reply* [ECF 21]

On November 7, 2020, Debtor filed a reply brief in support of his Motion. Debtor first argues Defendants' Opposition contains several misstatements of facts. First, regarding Debtor's 547 claim, which Defendants characterize as already determined, Debtor notes at the point of filing this reply, the Court had reserved decision on the Cross-Motions for Summary Judgment and Defendants' Motion to Expunge Claim. As noted above, the Court has since granted Defendants' Motion for Summary Judgment dismissing the § 547 cause of action.

Second, Debtor provides that Defendants have repeated the falsehood that Debtor has no other debt than the debt owed to Defendants. Debtor claims on his Claims Register, he has 12 creditors and each claim was documented with either a bill, statement, or a court judgment.

Debtor explains that shortly after *Hackler* was decided, Debtor sought legal representation concerning the tax sale judgment on his home, and Debtor avers that it could not

have been bad faith to have filed an adversary complaint, because it was done so based on a recent Third Circuit case, which Debtor believed to be on point in his case.

Debtor argues it was not he who delayed this case because he filed his adversary complaint the same day he filed his petition and promptly moved for summary judgment. Debtor explains he has a buyer willing to buy his home and that instead, BV001 is the one delaying this case with its Opposition and Motion to expunge their claim. Additionally, Debtor argues that the case which Defendants have argued should apply, *First Nat. Fidelity Corp. v. Perry*, 945 F.2d 61 (3d Cir. 1991), *superseded by statute*, *as stated in In re Bernadin*, 609 B.R. 26 (Bankr. E.D. Pa. 2019) was overturned by Congress in the 1994 Bankruptcy amendments and therefore should not apply.

Debtor also argues that Defendants' explanation of the law is flawed because in *In re 2435 Plainfield Ave.*, it was a debtor who sued under state law, and there is no mention of 11 U.S.C. § 548 in that case. While the Third Circuit affirmed, the Table Opinion in the case provides that affirmance is not Third Circuit precedent. Instead, Debtor argues *Hackler* is the binding precedent in this case and under *Hackler*, Debtor claims that he can satisfy the two elements of § 548 that: (1) he received less than a reasonably equivalent value in exchange for such transfer; and (2) he became insolvent as a result of such transfer. However, Debtor argues that this is only a motion to amend the complaint and on such motion, the Court is to freely give leave when justice so requires, and arguments can later be made on the merits.

### *Debtor's Additional Submission* **[ECF 25]**

On December 11, 2020, Debtor requested permission to submit, as supplemental authority for his motion to amend the adversary complaint, a published decision of Bankruptcy Judge Christine M. Gravelle: *In re Kopec*, 621 B.R. 621 (Bankr. D.N.J. 2020), which Debtor

argues holds that § 548 may be used to recover a house, transferred in a New Jersey tax foreclosure sale, when the tax debt did not constitute "reasonably equivalent value" compared to the value of the house, and the debtor "became insolvent as a result of the transfer."

### *February 10, 2021 Hearing*

On February 10, 2021, this Court held a hearing on the Motion for Leave to File Amended Complaint.

Neil Fogarty, Esq. appeared on behalf of the Debtor. Mr. Fogarty argues that under Fed. R. Bankr. P. 7015, courts are to freely give leave to amend. He cited *Arthur v. Maersk*, 434 F.3d 196 (3d Cir. 2006) for the proposition that inadvertent errors in pleadings should not preclude a party from securing relief on the merits of a claim. Mr. Fogarty argues that in this case, the Property, worth approximately $200,000, was transferred in exchange for a $30,000 tax debt. Therefore, the transaction meets the § 548 standard because it was an exchange for less than reasonably equivalent value, and Debtor became insolvent as a result of such a transfer. Mr. Fogarty argues that *In re Hackler and Stelzle-Hackler* supports the concept that one can avoid a tax foreclosure sale because while that case was argued under § 547, Mr. Fogarty believes under § 548, the result would be the same on the basis that there is no bidding in a tax foreclosure sale. Mr. Fogarty also cites *In re Kopec*, 621 B.R. 621 (Bankr. D.N.J. 2020), a recent decision of Bankruptcy Judge Christine M. Gravelle, which Mr. Fogarty argues is very factually similar to the present matter. In that case, Judge Gravelle held that while § 547 did not apply, § 548 did apply, relying on the different insolvency requirements of the two sections. Mr. Fogarty avers that Debtor has lost his house, and while he has some personal property, this property is all exempt, and therefore his assets total $0.00. Because the measure of insolvency is assets

compared to debts, Debtor is insolvent based on the debts represented in Debtor's Claims Register.

Next, Mr. Fogarty argues that amendment of this complaint would not be futile because § 548 of the Bankruptcy Code can be used to reverse a tax foreclosure sale. The Debtor plans to sell the property once it is recovered and pay all of his debts in full. Mr. Fogarty represents he has a buyer in waiting for the Property and that Debtor will not request any discovery in this adversary proceeding. In fact, it is Defendants who have requested discovery, and that discovery has been provided. Mr. Fogarty explains Debtor is ready to file a motion for summary judgment under § 548 if leave to file an amended complaint is granted.

Mr. Fogarty then addressed the argument raised by Defendants' counsel that the debts on the Claims Register are illegitimate. Mr. Fogarty provides that each of these 12 claims have been supported by bills, judgments and the like and that under *Kopec*, insolvency would be measured after the transfer occurred. The property was lost after the transfer occurred and all of Debtor's assets were exempt, so his assets totaled $0.00 and his liabilities were at least $3,293, not inclusive of the tax debt, which was an additional approximate debt of $30,000.

Brian Hofmeister Esq. appeared on behalf of Defendants. Mr. Hofmeister explains that the main issue in this case is the substantiation of the alleged debt. Mr. Hofmeister explains that not one creditor filed a proof of claim in this case, and some of the claims are quite old. In fact, Mr. Hofmeister's office reached out to one of the claimants, the Little Falls Municipal Court, (Claim No. 2 on the Claims Register) and learned the debt had been paid. Mr. Hofmeister argues that these claims were listed to make Debtor appear insolvent and that this issue will likely need to be dealt with in discovery to determine the true nature of these claims.

13

Mr. Hofmeister explains Defendants do not contest the issue of whether or not Debtor has standing to bring the adversary proceeding.[4] As to the issue of avoiding a tax foreclosure sale under § 548, Mr. Hofmeister acknowledges that there is a split of decisions regarding whether or not such sale can be avoided under § 548.

Mr. Hofmeister avers two issues will require discovery going forward. First, he will be serving subpoenas on each of the alleged creditors to determine if they have written off the debt or if the debt has already been paid. Second, Mr. Hofmeister will be seeking an explanation of what Debtor did with some $10,000 dollars that was withdrawn from Debtor's bank accounts in the months prior to the filing of the petition.

In terms of the impact BV001's claim would have on Debtor's insolvency, Mr. Hofmeister provides this is a debt against property, not a personal debt of the Debtor, and that prior to the bankruptcy filing, the tax foreclosure sale had already occurred.

Mr. Fogarty responded that the Debtor has medical bills from 2017 which are not time-barred. Mr. Fogarty provides that all Debtor needs to satisfy the insolvency requirement is one debt. Mr. Fogarty explains that with respect to the monthly withdrawals from Debtor's bank account, Debtor receives monthly social security payments which he then uses to pay bills, and Mr. Fogarty explains Debtor's Schedules demonstrate how Debtor spends his money. Mr. Fogarty explains there are small claims and judgments against Debtor which constitute debts.

As to the issue of insolvency, Mr. Fogarty cited *Johnson v. Home State Bank*, 501 U.S. 78, 111 S. Ct. 2150 (1991) for the proposition that debts *in rem* could be considered debts in a

---

[4] On September 16, 2020, Marie-Ann Greenberg, the Chapter 13 Standing Trustee, submitted a certification in Debtor's administrative case acknowledging the adversary proceeding and explaining that "there is no implication of Sec. 522(h) and no consent to use the trustee strongarm powers at this juncture" (ECF 49, Case No. 19-32789-RG). To date, the Chapter 13 Standing Trustee has not objected to the Debtor's standing to bring this adversary proceeding.

14

Chapter 13 case. However, because there are other debts, it is not necessary to reach that issue in this case.

LEGAL STANDARDS

### I.  Standard for Amending a Complaint

Pleading amendments are governed by Fed. R. Civ. P. 15, made applicable to bankruptcy proceedings by Fed. R. Bankr. P. 7015. A plaintiff is entitled to amend their claim once; courts may grant subsequent amendments "when justice so requires." Fed. R. Civ. P. 15(a). While this Rule also requires that leave to amend should be "freely given," a trial court has the discretion to deny this request if it is apparent from the record that: (1) the moving party has demonstrated undue delay, bad faith or dilatory motives; (2) the amendment would be futile; or (3) the amendment would prejudice the other party. *See Foman v. Davis*, 371 U.S. 178, 182, 83 S. Ct. 227, 230 (1962); *accord Lake v. Arnold*, 232 F.3d 360 (3d Cir. 2000). Rule 15(a) of the Federal Rules of Civil Procedure permits a party to amend a pleading "once as a matter of course at any time before a responsive pleading is served."  However, after amending once or after an answer has been filed, the plaintiff may amend only with leave of court or the written consent of the opposing party, but "leave shall be freely given when justice so requires." Fed. R. Civ. P. 15(a)(2).

The Supreme Court articulated the standard for Fed. R. Civ. P. 15(a)(2) in *Foman v. Davis*.  In that case, the Supreme Court stated that in the absence of any apparent or declared reason – such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. – the leave sought should, as the rules require, be "freely given." 371 U.S. at 182; *see also In re Burlington Coat*

15

*Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997) ("Among the grounds that could justify a denial of leave to amend are undue delay, bad faith, dilatory motive, prejudice, and futility"). The Supreme Court further held that "the grant or denial of an opportunity to amend is within the discretion of the District Court, but outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules." *Foman v. Davis*, 371 U.S. at 182. The Third Circuit has held that if a claim is vulnerable to dismissal under Rule 12(b)(6) and the plaintiff moves to amend, "leave to amend generally must be granted unless the amendment would not cure the deficiency." *Shane v. Fauver,* 213 F.3d 113, 115 (3d Cir. 2000).

## II.      Standard for Dismissal Under Fed. R. Civ. P. 12(b)(6)

To the extent that Defendants seek dismissal of the § 548 claim sought to be added to the Complaint by the Debtor under Fed. R. Civ. P. 12(b)(6), made applicable to the bankruptcy courts by Fed. R. Bankr. P. 7012,   a court must accept all well-pleaded allegations in the complaint as true, view them in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief. *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008). To survive dismissal under Fed. R. Civ. P. 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face*. Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1973 (2007); *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).

The Supreme Court has set forth a two-step analysis for adjudicating a dismissal under Rule 12(b)(6). *Ashcroft v. Iqbal,* 556 U.S. 662, 678-79, 129 S. Ct. 1937, 1949-50 (2009). First, a court should identify and reject labels, conclusory allegations, and formulaic recitation of the elements of a cause of action.  Second, a court must draw on its judicial experience and common

sense to determine whether the factual content of a complaint plausibly gives rise to an entitlement to relief.  This does not impose a "probability requirement" at the pleading stage, but requires a showing of "enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." *Phillips*, 515 F.3d at 233-34 (quoting *Twombly*, 127 S. Ct. at 1965).

In considering dismissal under Rule 12(b)(6), courts generally consider only the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of the claim. *In re Burlington Coat Factory Sec. Litig.,* 114 F.3d 1410, 1426 (3d Cir. 1997); *Buck v. Hampton Twp. Sch. Dist*., 452 F.3d 256, 260 (3d Cir. 2006). A court may also take judicial notice of a prior judicial opinion. *McTernan v. City of York*, 577 F.3d 521, 526 (3d Cir. 2009).

### III.    11 U.S.C. § 548 Fraudulent Transfers

11 U.S.C § 548 provides in relevant part:

(a)(1) The trustee may avoid any transfer (including any transfer to or for the benefit of an insider under an employment contract) of an interest of the debtor in property, or any obligation (including any obligation to or for the benefit of an insider under an employment contract) incurred by the debtor, that was made or incurred on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily—

> (A)  made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the  date that such transfer was made or such obligation was incurred, indebted; or
> (B)(i) received less than a reasonably equivalent value in exchange for such transfer or obligation; and
> (ii)(I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation.

11 U.S.C. § 548(a).

17

11 U.S.C. § 101(54) defines "transfer" as: "(A) the creation of a lien; (B) the retention of title as a security interest; (C) the foreclosure of a debtor's equity of redemption; or (D) each mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with (i) property; or (ii) an interest in property." "The word 'transfer' therefore has a very broad meaning under the Bankruptcy Code." *In re Decalcomania Mfg. Corp.*, 142 B.R. 670, 675 (Bankr. D.N.J. 1990). Courts must look to New Jersey state law to determine whether, and when, a transfer of the debtor's interest in the property occurred. *Id.* at 676 (citing *Butner v. United States*, 440 U.S. 48, 54-57, 99 S. Ct. 914, 917-19 (1979)).

Although "reasonably equivalent value" is undefined in the Bankruptcy Code, the Supreme Court established the standard in the context of mortgage foreclosure sales in *BFP v. Resolution Trust Corp.*, 511 U.S. 531, 114 S. Ct. 1757 (1994). In *BFP*, the Supreme Court declined to read the phrase "reasonably equivalent value" in § 548(a)(1) to mean, in its application to mortgage foreclosure sales, either "fair market value" or "fair foreclosure price" (whether calculated as a percentage of fair market value or otherwise). Instead, the Supreme Court held, in accordance with pre-existing interpretations of the law, that "a fair and proper price, or a 'reasonably equivalent value,' for foreclosed property, is the price in fact received at the foreclosure sale, so long as all the requirements of the State's foreclosure law have been complied with." *BFP*, 511 U.S. at 545, 114 S. Ct. at 1765.

Additionally, in an avoidance action under 11 U.S.C. § 548, there is no presumption of insolvency of the debtor on and during the 90 days immediately preceding the filing of the petition as there is in an avoidance action under 11 U.S.C. § 547. *In re Schultz*, 250 B.R. 22, 28 n.3 (Bankr. E.D.N.Y. 2000). Therefore, the trustee or debtor standing in the trustee's shoes must present at least some evidence that the debtor was insolvent on the date that such transfer was

made or became insolvent as a result of such transfer. *See* § 548(a)(1)(B)(ii)(I); *Mellon Bank, N.A. v. Metro Commc'ns, Inc.*, 945 F.2d 635, 649 (3d Cir. 1991) ("In the absence of any evidence as to the value of the accounts receivable and the sum owing on the accounts payable, and no proof of the value of Metro's rights to contribution, one cannot determine on this record whether the guaranty of the 1.85 million dollar loan and the accompanying security interest rendered the corporation insolvent."). The Bankruptcy Code states that "the term 'insolvent' means with reference to an entity other than a partnership and a municipality, [a] financial condition such that the sum of such entity's debts is greater than all of such entity's property, at a fair valuation, exclusive of— (i) property transferred, concealed, or removed with intent to hinder, delay, or defraud such entity's creditors; and (ii) property that may be exempted from property of the estate under section 522 of this title." 11 U.S.C. § 101(32)(A).

## IV.    Tax Foreclosure Sales as Fraudulent Transfers

In *BFP v. Resolution Trust Corp.*, the Supreme Court held that the price received at a mortgage foreclosure sale conclusively established "reasonably equivalent value" of the mortgaged property for purposes of the requirement under § 548 of the Bankruptcy Code so long as the state's procedures for that sale were followed. In reaching this conclusion, the Court reflected on the history of foreclosure law explaining that:

> [f]oreclosure laws typically require notice to the defaulting borrower, a substantial lead time before the commencement of foreclosure proceedings, publication of a notice of sale, and strict adherence to prescribed bidding rules and auction procedures. Many States require that the auction be conducted by a government official, and some forbid the property to be sold for less than a specified fraction of a mandatory presale fair-market-value appraisal.

511 U.S. at 542, 114 S. Ct. at 1763.

In *dicta*, the Third Circuit in *In re Hackler & Stelzle-Hackler* addressed the scope of *BFP*

explaining: "[t]he Court's decision in *BFP* is thus closely tied to both the language of § 548 and

the mechanics of mortgage foreclosures. The Court even emphasized, in a footnote, that its

'opinion . . . cover[ed] only mortgage foreclosures of real estate,' because '[t]he considerations

bearing upon other foreclosures and forced sales (*to satisfy tax liens, for example*) may be

different.'" 938 F.3d at 479.

While the Third Circuit has not squarely addressed the issue of whether a tax foreclosure

sale conclusively establishes reasonably equivalent value under § 548, the emerging case law in

this District and Circuit is that a tax foreclosure sale can constitute a fraudulent conveyance

under § 548 because the price received at a tax foreclosure sale does not conclusively establish

"reasonably equivalent value." In *In re Berley Assocs.*, the court held that a prepetition tax

foreclosure sale that was conducted in accordance with New Jersey law that did not provide for

advertising or competitive bidding did not conclusively establish reasonably equivalent value,

with the lack of bidding and appropriate advertising creating a "significant bar to adjudicating

'reasonably equivalent value'" in a tax foreclosure sale scenario. *In re Berley Assocs., Ltd.*, 492

B.R. 433, 440 (Bankr. D.N.J. 2013). The court also relied on the fact that a "tax sale certificate

foreclosure is a 'strict foreclosure' that does not result in a public sale, but merely a straight

transfer of title." *Id.* at 441.

In *Matter of Varquez*, the court held it was not required to draw the same conclusion in

the context of a transfer of title to property from a debtor to a tax sale certificate holder that was

drawn in *BFP* in the context of a mortgage foreclosure. *Matter of Varquez*, 502 B.R. 186, 192

(Bankr. D.N.J. 2013). The court relied on the fact that the procedures under New Jersey Tax Sale

Law are distinguishable from those in a mortgage foreclosure. *Id.* at 192. Mainly, "[u]nlike the

acquisition of title to property by a purchaser through a mortgage foreclosure sheriff's sale . . . the acquisition of free and clear title to property by a tax sale certificate holder through the foreclosure of a debtor's equity of redemption involves no sale, no notice requirements to third parties, no auction procedures, and no other exposure to the marketplace in any way." *Id.* at 192.

Similarly, in *In re GGI Props., LLC*, the court held that a tax foreclosure sale did not conclusively establish reasonably equivalent value under § 548. *In re GGI Props., LLC*, 568 B.R. 231 (Bankr. D.N.J. 2017). The court found "there simply is no correlation between the value received at the foreclosure of the equity of redemption and the value of the related property." *Id.* at 243. The fact that "there were not even any interested bidders and therefore the City acquired the tax sale certificate without any bidding" only made the conclusion that the sale did not constitute reasonably equivalent value more evident. *Id.* at 243.

Recently, the court held in *In re Kopec* that a tax foreclosure sale in which the defendant received the property worth approximately $130,000 on account of a $21,000 obligation was avoidable as a constructively fraudulent transfer, even when there was bidding on the tax sale certificate itself. *In re Kopec*, 621 B.R. 621, 625 (Bankr. D.N.J. 2020). The court explained that "in New Jersey parties bid on the tax sale certificate, not the property itself, which precludes a finding of 'reasonably equivalent value.'" *Id.* at 625. Because of this, the bidding "is in no way related to the actual value of the property, but rather to the amounts owed in taxes and the interest to be paid thereon." *Id.* at 625.

This Court acknowledges that there are other, less recent, lower Third Circuit cases that instead hold that a tax foreclosure sale constitutes reasonably equivalent value for purposes of a fraudulent conveyance under § 548 so long as all the requirements of the state tax foreclosure law were met. In *In re McGrath*, the court recognized that there are differences in procedures

21

between a mortgage foreclosure and a tax sale certificate foreclosure. *In re McGrath*, 170 B.R. 78, 81 (Bankr. D.N.J. 1994). However, relying on *BFP*'s holding that "reasonably equivalent value" does not mean "fair market value" and the fact that in New Jersey, the legislature amended N.J.S.A. § 54:5-87 to clarify that a tax foreclosure sale is not a fraudulent transfer under the Uniform Fraudulent Transfer Act, the court drew the conclusion that *BFP* applies with as much force to New Jersey tax foreclosures as it does to mortgage foreclosures. *Id.* at 80-83. Therefore, the price paid for the tax sale certificate established "reasonably equivalent value" under § 548 of the Bankruptcy Code. *Id.* at 83. Similarly, in *In re Lord*, the court concluded "that the reasoning of *BFP* applies to tax sales conducted in accordance with the [Pennsylvania] Tax Law." *In re Lord*, 179 B.R. 429, 436 (Bankr. E.D. Pa. 1995). The court relied on factors such as that the "[Pennsylvania] Tax Law provides ample notice to the taxpayer, a substantial opportunity to cure, and requires strict adherence to statutory requirements." *Id.* at 436.

This Court also acknowledges that courts in other Circuits have held that tax foreclosure sales establish "reasonably equivalent value" for purposes of § 548. *See In re Grandote Country Club Co., Ltd.*, 252 F.3d 1146, 1152 (10th Cir. 2001) where the court concluded "that the tax sale at issue constitutes transfer for 'reasonably equivalent value' under CUFTA [Colorado Uniform Fraudulent Transfer Act]"; *see also In re Washington*, 232 B.R. 340, 344 (Bankr. E.D. Va. 1999) ("[T]he court concludes as a general matter that the standards for reasonably equivalent value developed by the Supreme Court in *BFP* apply with equal force in the context of a judicial tax sale conducted in accordance with Virginia law").

However, in this District and Circuit, recent case law suggests that a tax foreclosure sale does not conclusively establish "reasonably equivalent value" under § 548 of the Bankruptcy

Code and a tax foreclosure sale can be avoided as a fraudulent transfer under § 548 of the Bankruptcy Code.

ANALYSIS

## I.    Amending the Complaint

Defendants did not demonstrate evidence of undue delay, bad faith or dilatory motives such to necessitate denying Debtor's Motion for Leave to Amend. This Court also notes Debtor filed the adversary complaint the same day the petition was filed and while this motion was not filed for approximately seven months after that, Plaintiff explains in pursuing only the § 547 claim, it was his belief that the *In re Hackler & Stelzle-Hackler* case was entirely on point and therefore believed the Complaint was sufficient as it stood and for that reason, there should not be a finding of bad faith or dilatory motive.

In considering whether the amendment would be futile, this Court does not find that such amendment would be futile. The dismissal of the § 547 preference claim in this case was based on the fact that "when measuring insolvency under [§ 101(32)], [the court] include[s] on the asset side of the calculation the property interest allegedly transferred as a preference." *In re Babiker,* 180 B.R. 458, 460 (Bankr. E.D. Va. 1995). As such, Debtor could not meet the insolvency requirement under § 547. However, under § 548, Debtor instead must demonstrate he "was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation." 11 U.S.C. § 548(a). Therefore, under § 548, the Property is not required to be included on the asset side for the calculation of insolvency. If other valid debts exist, Debtor can arguably demonstrate he became insolvent as a result of the transfer of the Property. Therefore, this Court does not find that amendment of the Complaint would necessarily be futile as a matter of law.

23

As to prejudice, Defendants did not demonstrate they would suffer prejudice if this Court granted Debtor's Motion for Leave to File Amended Complaint. This Court also notes that the § 548 claim rests on the facts already pleaded in the Complaint, and therefore Debtor will not be seeking any discovery from Defendant. Further, Debtor provides that once the Property is recovered back into the estate, it will be sold and all 12 creditors, including BV001, will be paid in full.

## II.    Dismissal Under Fed. R. Civ. P. 12(b)(6)

To the extent Defendants are asking this Court to dismiss the Second Count of the Amended Complaint, this Court accepts all well-pleaded allegations in the complaint as true, viewing them in the light most favorable to the plaintiff. *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008).

As to the Count pleaded under § 548 of the Complaint, Debtor avers that Defendants filed a tax foreclosure complaint against Debtor, and the Superior Court entered an order fixing the amount at $30,540.53 with additional costs of $1,240. Ultimately, a Default Order for Final Judgment was entered against Debtor in the tax foreclosure, which resulted in a strict foreclosure without bidding or a sheriff's sale and the transfer of the Property to Defendants. Debtor avers as of the date of the final judgment in the tax foreclosure, September 18, 2019, the Property was worth $220,000 based on a contract of sale Debtor had entered into 9 days before the Final Judgment of Foreclosure was entered. Debtor avers he became insolvent as a result of the transfer as his assets (less exemptions) were less than the amounts of his debts.

For those reasons, Debtor seeks to avoid the transfer of the Property under § 548 of the Bankruptcy Code on the basis that the: (1) Debtor received less than a reasonably equivalent value in exchange for the transfer of the Property; (2) Debtor became insolvent as a result of the

24

transfer; (3) transfer was involuntary; and (4) Chapter 13 Trustee has not attempted to avoid the transfer.

The Third Circuit has not squarely addressed the issue of whether a tax foreclosure sale conclusively establishes reasonably equivalent value under § 548. However, while there are cases pointing in both directions, the recent cases in this District and Circuit hold that a transfer of property pursuant to a tax foreclosure sale can constitute a fraudulent transfer under 11 U.S.C. § 548, and this conclusion is not barred by the Supreme Court's holding in *BFP v. Resolution Trust Corp.*.

This Court cites *In re Kopec*, 621 B.R. 621, 625 (Bankr. D.N.J. 2020); *In re GGI Props.*, LLC, 568 B.R. 231 (Bankr. D.N.J. 2017); *Matter of Varquez*, 502 B.R. 186, 192 (Bankr. D.N.J. 2013); and *In re Berley Assocs., Ltd.*, 492 B.R. 433, 440 (Bankr. D.N.J. 2013), all of which stand for the proposition that a tax foreclosure sale does not conclusively establish reasonably equivalent value under § 548 and such sale can be avoided as a fraudulent transfer under § 548 of the Bankruptcy Code if the elements of § 548 are met.

As to the issue of the insolvency, Defendants dispute Debtor's insolvency and the legitimacy of the debts on Debtor's Claims Register. Considering dismissal under Fed. R. Civ. P. 12(b)(6), the Court is to take all factual allegations as true. Upon the transfer of the subject Property, Debtor alleges his assets (less exemptions) were less than the amount of his debts. Therefore, the insolvency requirement under § 548 is satisfied so long as there is one facially valid claim of a debt. In Debtor's bankruptcy proceeding, there are a total of 12 claims filed for a total amount of $33,833.93. All of these proofs of claims were filed by the Debtor's attorney. Under Fed. R. Bankr. P. 3004, "[i]f a creditor does not timely file a proof of claim under Rule 3002(c) or 3003(c), the debtor or trustee may file a proof of the claim within 30 days after the

expiration of the time for filing claims prescribed by Rule 3002(c) or 3003(c)." Therefore, there is nothing facially invalid about these claimed debts. The Court does not need to reach the issue of whether BV001's claim is considered a debt against the Debtor in his Chapter 13 case under *Johnson v. Home State Bank* because there are 11 other claimed debts. The issue of whether or not these claimed debts are bona fide debts is a factual issue which is not ripe for determination on a Motion for Leave to File Amended Complaint.

### CONCLUSION

For the foregoing reasons, Debtor's Motion for Leave to File Amended Complaint is GRANTED. An Order shall be submitted in accordance with this Opinion. The Debtor shall file and serve the Amended Complaint within 15 days of the date of this Opinion.

Dated: March 9, 2021                    *Rosemary Gambardella*
                                        ROSEMARY GAMBARDELLA
                                        United States Bankruptcy Judge